Nathan R. Sobel, J.
A hearing has been held on this coram nobis application. It was stipulated that all of the allegations in the petition are deemed to be true. There were independent records of the court available to establish the truth of petitioner’s contentions.
As stipulated the facts are found as follows:
Petitioner was arrested and charged under the Joy-riding Statute (Penal Law, § 1293-a) with stealing his employer’s automobile. He was indicted for grand larceny and counsel (now deceased) was assigned to him. He informed counsel that he was not guilty; that his employer by past conduct permitted him, and in law impliedly consented, to his operating the automobile in question; that the only reason the employer charged him with the theft was because there had been an accident with another car and the employer was concerned with the insurance consequences to him. That despite his explanation of the facts and his insistence to assigned counsel that he was innocent, counsel ‘ ‘ implored ’ ’ him to plead guilty to petit larceny and promised him that he would be ‘ ‘ sent home ’ ’ and that the plea “ would not harm me [him] in the future.”
In fact, he was “ sent home ”, for, immediately upon acceptance of the plea he received a suspended sentence (June 30, 1943).
However, the plea did ‘1 harm ’ ’ him in the future since he was later convicted of possession of a weapon (raised to felony status by the 1943 conviction) and he is now serving for a still later crime, a 10- to 20-year sentence as a second felony offender. *74 By setting aside the 1943 conviction, he would ultimately reduce his present sentence to a first offender status,
While I have found that the in future promise (in practical effect a prediction) was actually made, I disregard it entirely, Such a general promise does not and should not protect a defendant from the consequences of future crimes or give him immunity from increased punishment occasioned by his own acts. Such a promise is neither evidence of coercion nor does it tend to establish inadequacy of counsel. Coram nobis does not lie on that issue. (Cf. People v. Ehlers, 16 A D 2d 795,)
Petitioner’s main contention is that his assigned counsel by inducing him to plead guilty with knowledge of facts which could establish a legal defense performed his assigned duties so inadequately as to constitute no representation at all. Petitioner does not rely on any conduct or action on the part of the State, through the court or prosecutor. But he contends that the acts and conduct of assigned counsel, by virtue of such assignment by the court, constitute acts and conduct of the court by some implied agency, He thus distinguishes between the obligations of assigned counsel and retained counsel. In People v. Hernandez (8 N Y 2d 345, 347) the court stated:
“ Although eases may arise where we may find that the constitutional rights of a defendant are violated because the representation of retained counsel is inadequate * * iM this is not such a case. The alleged misconduct of counsel chosen by defendant cannot be attributed to * action on the part of the State ’ (see People v. Tomaselli, 7 N Y 2d 350, 354; People v. Brown, 7 N Y 2d 359) and even if proven would not constitute a denial of due process.” (Italics supplied.)
" In People v. Tomaselli (7 N Y 2d 350, 354) the court, in discussing defendant’s claim that "lie was improperly represented by his assigned counsel, stated:
" A reading of the pertinent decisions, including those urged upon us in the defendant’s behalf * * * makes it clear that post-conviction relief is available to a defendant only where it is action on the part of the State, through court, prosecutor or other law enforcement officer, which brought about a denial of effective assistance of counsel or an interference with the defendant’s right to such assistance.” And further (p. 356): 1 ‘ In short, there is denial of effective representation of Counsel only when the representation given is so patently lacking in competence or adequacy that it becomes the duty of the court to he aware of it and correct it.
" Indeed, to hold otherwise would require a rule that a conviction must be vacated solely on the ground that assigned *75 counsel was negligent or otherwise at fault in performing his duty. Although we do not condone or make light of an alleged failure on the part of any lawyer to serve his client adequately, it furnishes no basis either in reason or authority for setting aside a judgment. * * *
“ This court has ever acknowledged that coram nobis serves a vital function and that there is a real need to assure to an accused the effective assistance of competent counsel. Full and unstinting recognition of this principle, however, must not lead us to apply an impossible standard or impose on our courts a duty impossible of fulfillment, nor should it lead us to penalize the People solely because of an asserted failure on the part of assigned counsel to represent his client properly. An effective assignment there must be, but this does not mean that a court, once it has appointed a member of the Bar to act for the defendant, must stand as surety for the proper performance of counsel’s professional duty.” (Italics supplied.)
In People v. Brown (7 N Y 2d 359, 361) the court also observes: “ Cor am nobis may not be availed of to remedy counsel’s negligence or error of judgment. It would be folly indeed for the courts to sit and hear disappointed prisoners try their former lawyers on charges of incompetent representation. Absent evidence that the trial judge appointed an attorney who was unfit to defend the accused or that the judge allowed counsel to continue to act after it appeared that his representation was such as to make the trial a farce and a mockery of justice, the fact, if it was one, that assigned counsel made an error of judgment or of tactics during the course of trial is an insufficient ground for coram nobis and, this being so, it would be futile to have a hearing.”.
These cases hold that acts and conduct of both assigned and retained counsel are not “ action on the part of the State.”
Assigned counsel are expected, and indeed do, give to their indigent clients the same professional attention they give to those who retain and pay them. But in determining on an ad hoc basis whether representation is so inadequate as to violate due process, stricter scrutiny and stricter standards should be applied to assigned counsel. This is not however because the acts and conduct of assigned counsel are attributed to the court but simply because the client has nothing to do with selecting assigned counsel while he bears responsibility for selecting retained counsel.
The foregoing is a generality which has little practical application. The acts and conduct of counsel, assigned or retained, must be examined in each case taking into consideration the *76 nature of the charge and all other factors and a determination made whether the representation was so totally inadequate as to violate due process standards of the State and, perhaps, the Federal Constitutions.
Judge Fuld in Tomaselli (supra, pp. 354-355) suggests certain standards. Clearly, common mistakes of judgment, of trial tactics, of policy do not constitute grounds for collateral attack. These are made by retained counsel as well as assigned counsel. We simply examine all of the factors, whether during trial or before plea, and determine whether the aid and assistance of counsel was of such a substandard level as to be open to collateral attack via coram nobis on the ground that petitioner was deprived of his constitutional right to effective assistance of counsel.
That is not the case here. Assigned counsel was unquestionably advised by his client that he was not guilty and the facts and circumstances which would constitute a defense were related to him. Counsel undoubtedly conferred with the court and prosecutor. He was advised that a misdemeanor plea was acceptable and that a suspended sentence would result. Balancing the consequences to the defendant, he elected the plea and the suspended sentence in preference to the trial and the contingency of a conviction or acquittal of the felony. This was a commonplace decision. Even if it were a mistake it was only a mistake of judgment. No doubt the client was completely satisfied. (The minutes of plea are not available.)
If a general rule can be stated it is that mistakes of counsel will not amount to a denial of due process unless on the whole the representation by counsel is of such low standard as to be no representation at all or to reduce the proceeding to a farce or a sham.
As a practical proposition, based on experience, most defendants inform their assigned counsel that they are not guilty. Fewer admit their guilt. It would be poor representation indeed if assigned counsel permitted the defendant to determine whether the issue of guilt or innocence should be submitted to the jury. It is the duty of counsel to ascertain the facts, not alone from the defendant but also from the prosecutor and on the basis of these facts, make and convey his judgment to the defendant. Since no plea is ever accepted by the court without an admission of guilt on the record, the defendant’s rights are protected. Perhaps if the defendant in the instant petition had informed counsel that he was not the person who committed the crime, a different result would follow. But in the instant case, the acts constituting the crime were in fact committed and *77 admitted by the defendant. The issue for counsel to determine was the availability of a legal defense. He made bis judgment. The defendant accepted it.
I find that the petitioner was not denied due process under Federal or State standards. Petition is denied.