## Fourth Department, January, 1979

### (January 19, 1979)

■ The People of the State of New York, Respondent, v Leslie A. Roff, Appellant.—Judgment unanimously reversed, on the law and facts, and new trial granted. Memorandum: Defendant was convicted of burglary in the third degree and unlawful imprisonment in the second degree. She was a graduate of Keuka College. In the early morning of October 13, 1976 a housekeeper at the college, Mrs. Wheeler, entered the library to commence work, and was grabbed by a girl, who was accompanied by another girl, and was dragged to the basement, placed on a chair and tied, gagged and threatened, and was left there. She was found 45 minutes later by a maintenance man, who untied her. She was so emotionally upset that she was taken to the infirmary. She had never seen either of the two girls before, but gave a statement and description of them to a Deputy Sheriff. The deputy showed Mrs. Wheeler a 1976 college yearbook containing pictures of the Keuka College students, and she picked out the picture of a girl on page 21 and the same girl on page 76 as being the one who attacked her; but she never did identify the second girl. She testified that for 10 or 15 minutes in good light she saw the girl who tied her up; that the girl had long, red hair, did not wear glasses, and wore blue jeans and a heavy wool sweater. She later identified defendant as that girl. Detective Spike had known defendant when she had long hair, as shown on page 76 of the yearbook. He found some hairs under the chair where Mrs. Wheeler was tied up. He also obtained a search warrant on October 26, 1976 and on November 3 by the use thereof he gained admittance to the residence of defendant's mother where defendant lived with her sister and another person, and he took some hairs from a hairbrush in the bathroom. He delivered both sets of hairs to the Monroe County Laboratory for study. He also removed a .22 H & R pistol from the residence, although the pistol was not mentioned in the warrant. He did not inquire who owned or used the hairbrush. A laboratory chemist testified that the two sets of hair samples had similarities and *could* have come from the same person. Another expert testified that it was impossible to identify the origin of the hair found at the scene or that taken from the hairbrush. Defendant's sister testified that she thought that it was her hairbrush from which the detective took the hairs; that she brushes her hair, but defendant never uses a hairbrush; that defendant had cut her hair in July, 1976 and it was much shorter than shown in the yearbook pictures. She also testified that defendant was very nearsighted and always wore glasses except when posing for a picture. Other witnesses confirmed the sister's testimony. There was also testimony by defendant and others that the library closed at 11:00 P.M. each night and was locked, and that defendant was at her residence after 11:30 P.M. the previous night and so could not have remained in the library during the night, as was alternatively charged in the indictment. A security guard testified that he thought that he had seen defendant days before the crime wearing a sweater and clothes similar to those that she was wearing in a photograph of her received in evidence. The court erred in receiving and refusing to strike the testimony of the chemist that the hair taken from the bathroom and that found at the scene of the crime could have come from the same person and that there was some similarity between the two samples, and erred in receiving the physical evidence itself. "Expert opinion

evidence lacks probative force where the conclusions are contingent, speculative or merely possible" *(People v Harding,* 59 AD2d 897, 898). Since the evidence was inadequate to connect the hair samples with defendant's hair, it was inadmissible, because it did not "accurately portray a relevant and material element of the case" *(People v Julian,* 41 NY2d 340, 342). The court also erred in permitting the detective to testify, over objection, that prior to the trial Mrs. Wheeler identified a photograph of defendant. "The rule is settled in this State that a witness may not testify to an extrajudicial identification of a photograph of the defendant" *(People v Griffin,* 29 NY2d 91, 93). No exception to this rule is applicable here (see *People v Caserta,* 19 NY2d 18). The following language therefore is most apposite: "In a case such as this which is based on the identification by the victim only and the same witness is the only one to testify as to the alleged crime, any proof erroneously allowed in support of the version of the victim may not be disregarded *(People v. Trowbridge,* 305 N. Y. 471, 477)" *(People v Jennings,* 23 AD2d 621). Likewise the court erred in receiving the testimony of the security guard that a few days prior to the crime he saw defendant wearing clothing similar to that which she wore in a picture of her. It was worthless evidence with respect to the crime but highly prejudicial on the issue of identification. In addition, the prosecutor deprived defendant of a fair trial when, despite adverse rulings by the court, he repeatedly asked questions concerning the .22 pistol which was unrelated to the crime. This was only calculated to prejudice defendant before the jury *(People v Winston,* 52 AD2d 432, 434; and see *People v Andre W.,* 44 NY2d 179, 188). Finally, we conclude that the record establishes that defendant was denied effective assistance of counsel in the failure of counsel before trial (1) to move to suppress the victim's identification testimony (see *People v Sims,* 55 AD2d 629; (2) to investigate the propriety of the search warrant and move to suppress the evidence seized from defendant's residence; (3) to move to dismiss the indictment as being patently defective because of the allegations that defendant entered or remained in the building; and (4) to move timely to dismiss the indictment on the ground that defendant was not offered an opportunity to appear before the Grand Jury. The latter motion was waived in law when not timely made *(People v Grimsley,* 60 AD2d 980), and the court properly so ruled when the motion was later made (see CPL 190.50, subd 5, par [c]). "It is elementary that the right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense * * * and who is familiar with, and able to employ at trial basic principles of criminal law and procedure * * * Whether counsel has adequately performed these functions is necessarily a question of degree, in which cumulative errors particularly on basic points essential to the defense, are often found to be determinative" *(People v Droz,* 39 NY2d 457, 462; and see *People v Brown,* 45 NY2d 852; *People v Cossentino,* 38 NY2d 760; *People v La Bree,* 34 NY2d 257). We find no merit in defendant's other claims of error. (Appeal from judgment of Yates County Court—burglary, third degree, etc.) Present—Moule, J. P., Cardamone, Simons, Schnepp and Witmer, JJ.